Parker, J.
The main question in this cause arises • • • on the bequest in the will of the testator Robert Manson, that at the death of his wife, the whole of his personai estate (which he had bequeathed to his wife for life) should be equally divided among his surviving children thereafter named, Sec. And the question is, whether the words surviving children shall be taken to refer to the period of the testator’s death, or to that of the death of his widow the tenant for life ? If to the former, the interest vested in all the testator’s children living at his death, and passed to their representatives ; the time of distribution among them being alone postponed : if to the latter, then Elizabeth and Peter Manson, who alone survived the tenant for life, were entitled to the whole property; and the decree must be reversed.
After an attentive examination of all the authorities cited at the bar (wdiich include, I believe, all that have any material bearing on the subject) I am of opinion, that although the children of the testator were not to take in possession until the death or second marriage of the widow, they took an interest at the period of the testator’s death ; that wherever the words survivors and surviving are used in a will, especially by an unlearned man inops consilii (as this testator evidently was), without manifesting any special intent to the contrary, the safest and soundest construction, that most consonant to the intention of the testator and best supported by the authorities, is to refer them to the death of the testator, and not to give the whole estate to such legatee as happens to survive the tenant for life, or, if none survives, to declare a total intestacy. The only authority directly opposed to this construction is the case of Cripps v. Wolcott, decided by sir John Leach in 1819— where the vicechancellor laid down as the general rule, that words of survivorship are to be referred to the period of division and enjoyment, if there be no special intent to the contrary; and that if a previous life es *90 tate is given, the period of division being the death of the tenant for life, the survivors at such death will take the whole legacy—which, he said, was the principle of Russell v. Long, Daniell v. Daniell, and Jenour v. Jenour. But I think it will be found, that those cases do not sustain the proposition; while the cases of Wilson v. Bayly, Roebuck v. Dean, Perry v. Woods, Maberly v. Strode, Brown v. Bigg, Doe d. Long v. Prigg, are manifestly in opposition to it. The last case I consider as directly in point, or rather as going beyond the case at bar, because the remainder there was to a class, and here it is to children named.
In the case of Russell v. Long, the three sisters among whom and “ the survivor or survivors of them” the legacy was to be divided after the death of the tenant for life, all outlived their mother the tenant for life, as well as the testator; and the bill was brought by the executors of Christiana., one of the surviving sisters; the only question being, whether the sisters were tenants in common or joint tenants. The chancellor, on the authority of Stringer v. Phillips, decided that upon the death of Christiana, her third part passed by her will. So far, the case is opposed to the principle stated by sir John Leach. But lord Alvanley added this observation—“ If all the sisters had not survived their mother, fossibly 1 might have adopted the construction, that the survivorship related to the death of the mother, and not of the testator; for I think that construction is not to be adopted, if any other can be.” It will be found that this loose dictum of lord Alvanley not only misled sir John Leach, but betrayed sir William, Grant in the case of Brown v. Bigg, into the observation (whilst the argument was going on) that the general leaning of the court was against construing the words of survivorship to relate to the death of the testator, if any other period could be fixed upon. In the case of Shergold v. Boone, 13 Ves. 375. he retracted that remark; and stated, that *91 in regard “ to the effect of a general clause of survi- . , , r vorship, he had found the result ol the authorities contrary to what had fallen from the court during the argument of Brown v. Bigg, founded upon what lord AleanIcy had said in one of the cases ; and that, in a great majority of them, the survivorship had been referred to the period of the testator’s death.”
In Daniell v. Daniell, there was a clear, special intent to refer the survivorship to the period of the death of the tenant for life, not onty by the effect of the words “ to be paid equally between the two sons James and Francis, or the whole to the survivor of them,” but more conclusively by the mode in which the testator disposed of the other sum of £1000. to the same persons, in which the period of division was, beyond all doubi, the period at which he intended it to vest; a circumstance relied on strongly by sir PV. Grant, as confirming his construction of the clause on which the question arose.
The case of Jenour v. Jenour was one of considerable doubt and difficulty, and in the course of it lord Eldon intimates an opinion, but does not decide, as to the effect of two clauses in the will; one giving £200. per annum., after a previous estate for life, equally to be divided between the testator’s nephews and nieces, and the survivors of them; and the other giving £200. per annum, after a previous estate for life, to be equally divided between his two nephews, and “ to go to the survivor of them.” But no sucli question was before the court; and, in point of fact, all the nephews and nieces survived the tenants for life. The question argued and determined arose out of a clause in the will giving £ 92. long annuities, to be equally divided between his two nephews, and to go to the survivor of them, after the death of the testator’s brother and sister; and really turned upon the point whether they were to take as joint tenants, with benefit of survivorship between them *92 selves, or as tenants in common. Lord Eldon determined, that the plaintiff should take the moiety of the £ 92. per annum, absolutely, as tenant in common. The case seems, therefore, to belong to the same class to which Stringer v. Phillips and Russell v. Long may be referred; and thus, like the two former, it affords no support to the principle it was cited to sustain.
I have looked into the other cases cited by the appellants’ counsel, to shew that a general clause of survivorship after a previous estate, is to be referred to the period of division, unless a special intent to the contrary appears—Brograve v. Winder, Hoghton v. Whitgreave, Newton v. Ayscough, and Browne v. Ld. Kenyon. In the three first cases, the intention was very clear to refer the survivorship to the death of the tenant for life. The estate, at that time, was to be sold by trustees and divided. That naturally pointed to the period of sale, as the period to ascertain who were the persons to take. In two of the cases, it was real estate to be converted into money by trustees, who were not themselves to take until after the death of tenant for life; so that (as the master of the rolls observed in one of them) the subject matter did not, until the death of the tenant for life, exist in the form in which it was given. Newton v. Ayscough is distinguished by sir W. Grant from Perry v. Woods, and likened to the cases of Brograve v. Winder and Hoghton v. Whitgreave; in the former of which lord Loughborough admitted it to tie generally true that the words “ survivors or survivor,” or “ surviving,” after a previous estate, would not prevent the vesting of the estate at the death of the testator. The remaining case of Browne v. Ld. Kenyon turned on a bequest, after a life estate, to the testator’s two brothers in equal shares, “ or the whole to the survivor.” Sir John Leach was of opinion that it was the meaning of the testator, that if one only survived the tenant for life, he should take the whole ; that it was a vested gift to the two as te *93 wants in common, subject to be divested if one alone . » survived; but as both brothers died m the lifetime of the tenant for life, the estate never was divested, and the money was divisible between the representatives of the two brothers. In this case, it is manifest, there was a special intent that the survivor should take the whole ; and the opinion of the vicechancellor, that the estate vested in both, shews that it does not interfere with the rule I have indicated as the true one, in the first part of this opinion.
That rule is sustained by the cases I mentioned before, and several others unnecessary to be cited. Brown v. Bigg, (divested of the hasty observation of sir W. Grant, which he afterwards retracted in Shergold v. Boone) is in point; and so is Long v. Prigg, decided in the year 1828. Sir John Leach said that Roebuck v. Dean and Perry v. Woods did not square with the other authorities ; but the first is cited and approved in Halifax v. Wilson, the latter in Newton v. Ayscough, and both by Bayley, J. in delivering the judgment of the court in Long v. Prigg. After this, I cannot doubt the soundness of the observation made by lord Loughborough in Brograve v. Winder—that it is generally true the word survivors will not prevent the vesting of the estate at the death of the testator; or, as lord Alvanley expressed it in Maberly v. Strode, “the blind words ‘ with benefit, of survivorship’ &c. mean the survivors at the death of the testator.”
But if the general rule were as sir John Leach states it to be, I. should still be of opinion, that the words of this will shew a special intent that the interest should vest in the children surviving at the testator’s death, and the child his wife might have. For, 1st, the profits are given for the comfort and support of his wife and children thereafter named, during the wife’s life; which is indicative of his intention to vest the estate in the children to be supported. 2ndly, If the wife mar *94 ried again, she was to take but one third of the estate, , and unless the whole vested in interest in the children, there would be a partial intestacy as to the two thirds; which ought not to be presumed; it being clearly the intention of the testator to dispose of his whole estate. 3rdly, The bequest is to children specially named ; and I cannot believe the testator meant to make a tontine among them, and if all but one died before the mother, for that one to take all, in exclusion of grandchildren or their descendants. This would, I believe, in ninety-nine cases out of a hundred, defeat the intention. 4thly, The estate is to be equally divided amongst children named, as individuals, not as a class: equality between them is the obvious intent; and this equality would be defeated by allowing a survivor to take the whole. 5thly, If none survived the tenant for life, a total intestacy is the consequence, which this testator manifestly did not intend. And, lastly, the provision that if his wife was then with child, that child was to have an equal part of his personal estate with the rest of his above-mentioned children, shews that the testator meant that each of his children named should have an equal part in any event. He does not make the interest of the child to be born, dependant upon his surviving the mother, although his possession is necessarily postponed; and, therefore, it ought not to be presumed, that he intended to make the interest of his other children dependant on that event. If, therefore, the period to which survivorship relates is to be ascertained, “not by any technical words, but by the apparent intention of the testator, collected either from the particular disposition, or from the general context of the will,” (19 Yes. 536.) I feel no doubt upon this will, that the testator meant all his children to take a vested interest at his death; and, consequently, that the decree in this particular is right.
Upon the other points argued at the bar, I shall touch very briefly, there being no difference of opinion among the members of the court in regard to them.
*95 As to the length of possession, and the statute of limi- ° ill ill tations, it was not contended that they would have protected the defendants in the court below, against the claims of the legal representatives of the deceased legatees, if a suit for the property had been brought in their names. But it was argued, that they protect the defendants against the equitable right of the next of kin or distributees of those decedents to sue; an equitable right being barred by the same length of time that would bar a legal right. No authority was cited to shew that a person under the disability of infancy or coverture, who might, at the commencement of such disability, have sued by prochein amy, may not sue during its existence, in the same manner, although more than five years have elapsed. The action belongs to the infant or feme covert, not to the next friend ; his or her rights are saved, till the disability ceases. Here, the plaintiffs having been under the disability of infancy or coverture, their case was not within the statute; nor will equity carry the statute beyond the law. Moreover, at the time when Hansford and Peter Manson took possession of and divided the estate of the testator Robert Manson, there was no representative of that estate in being: they ought to be considered as executors in their own wrong, liable, like all other executors, to legatees and distributees.
The last point is, I think, settled by the cases of Frazier v. Frazier, and Samuel v. Marshall, cited at the bar, and by another case, Moring v. Lucas, 4 Call 577. all of which proceed upon the assumption, that legatees or distributees may sue in equity, but they are bound to bring the executor or administrator before the court, in order to a decree for distribution. It would bo productive of much inconvenience and injustice, if they could not avail themselves of their equitable rights to injoin a sale (as in the present case) or to prevent other irreparable mischief, before an administration of the estate *96 could be obtained, or where an executor or administrator should be indisposed to interfere.
I think the decree should be affirmed.
Brookenbrough, Cabell and Brooke, J. concurred.